1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF WASHINGTON

8  JERRY D. SCHARF,

9              Plaintiff,            NO.  CV-04-0222-LRS

10     v.                            **ORDER DENYING PLAINTIFF'S MOTION
                                     FOR SUMMARY JUDGMENT AND**
11 JO ANNE B. BARNHART,              **GRANTING DEFENDANT'S CROSS-**
   Commissioner of Social           **MOTION FOR SUMMARY JUDGMENT**
12 Security,

13             Defendant.

14

15

16                         **INTRODUCTION**

17      The plaintiff, Jerry D. Scharf, moves the court for summary

18 judgment and the defendant has submitted a cross-motion for summary

19 judgment.   Because the court finds the Administrative Law Judge

20 ("ALJ") properly analyzed in his written decision the plaintiff's

21 allegations of mental and physical impairments, properly accorded

22 appropriate weight to medical evidence and medical experts, and

23 properly applied the correct legal analysis to the disability

24 determination, the court denies the plaintiff's motion and grants

25 the defendant's cross-motion.

26                         **BACKGROUND**

27      Plaintiff protectively filed an application for Title XVI

28 Supplemental Security Income (SSI) disability benefits and an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

application for disability insurance benefits on October 26, 2001 (Tr. 69) alleging an onset date of June 1, 2000 (Tr. 70, 297). Benefits were denied initially and upon reconsideration. A request for a hearing was timely filed (Tr. 49).

On May 8, 2003, a hearing was held (Tr. 308-334). Testimony was taken from plaintiff, who was represented by an attorney; Jay M. Toews, Ed.D., a medical expert; Kenneth D. Sawyer, M.D., a medical expert; and Dennis Dexter, a vocational expert.

Born in 1954, the plaintiff was 49 years old at the time the ALJ issued his decision (Tr. 29). Plaintiff has an eighth grade education (Tr. 21). His prior work experience was as a cook, described as medium physical demand, SVP 7; and logistical support for forest firefighters (Tr. 124), estimated by a disability adjudicator to be of medium physical demand, SVP 7[1].

At the hearing, plaintiff testified that he had been receiving counseling for depression, once per month. Id. He testified that he continued to go because they kept telling him to come back, although he stopped going about a week before the hearing. Id. He testified that he currently experienced problems with back pain once per week, with severe pain a couple of times per month, going down his legs. Id. To relieve this severe pain, he gets into a position to relieve the pain and takes narcotic pain medication. Id. He testified that he takes narcotic pain medication 14-15 days per month.

The plaintiff stated that he continues to have anxiety attacks that interrupt his sleep a few times a month, although sometimes he

---

[1]The vocation expert, Mr. Dexter, did not have enough information for which to testify regarding the physical demands or the skill level (Tr. 329).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

would go a couple of months without one. Id. The plaintiff is 6'
and weighs 325 pounds (Tr. 27). His doctor has told him to lose
weight. Id. He testified that he becomes short of breath with
activities such as walking and stair climbing, and estimated he
could walk 2 blocks on a good day. Id. He testified that since
about June 1, 2000, he has had difficulty being able to hold down a
job because "jobs won't allow me to take as much time off as I was
having to." (Tr. 330).

The plaintiff alleges disability as of June 1, 2000 based on a
variety of musculoskeletal and psychological impairments. These
include bad knees, neck, hips, and mental health problems (Tr. 21).
The ALJ found, in an eleven-page written decision, that plaintiff
was not disabled within the meaning of the Social Security Act (Tr.
21). The ALJ found that plaintiff had the residual functional
capacity to perform sedentary work (Tr. 30, Finding 7). The ALJ
also found that: plaintiff could occasionally engage in overhead
lifting; he is able to learn and carry out complex instructions; his
anxiety would episodically interfere with his concentration, work
attendance and pace; and he would do best with a firm but
nonaggressive supervisor (Tr. 30, Finding 7). The ALJ's decision
became the final decision of the Commissioner when the Appeals
Council declined to review the decision on June 14, 2004 (Tr. 5-8).
The plaintiff then commenced this action.

## DISCUSSION

The plaintiff raises two issues on appeal. First, the
plaintiff argues that the ALJ's written decision is not supported by
substantial evidence. Second, the plaintiff alleges the ALJ did not
apply the proper legal standard. And more specifically, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1 | plaintiff argues:

2
3
4

> What makes this case troubling is we have an on record decision by Judge Hood favorable to the plaintiff followed by a written decision that is a complete repudiation of that on the record decision and without explanation of the change.

5 | Ct. Rec. 10 at 4.

6 | **A.   Review of Commissioner's Decision**

7 | A district court must uphold the [Commissioner's] determination

8 | if the factual findings are supported by substantial evidence and

9 | the [Commissioner] applied the proper legal standards.   *Curry v.*

10 | *Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1990).  "Substantial evidence"

11 | means more than a "mere scintilla" of evidence, but "less than a

12 | preponderance."   *Young v. Sullivan*, 911 F.2d 180, 183 (9th

13 | Cir.1990).  If the ALJ applies the wrong legal standard, the ALJ's

14 | decision must be set aside even though the findings are supported by

15 | substantial evidence. *Brawner v. Secretary of Health and Human*

16 | *Services*, 839 F.2d 432, 433 (9th Cir. 1987).

17 | **B.   The ALJ Properly Evaluated Available Medical Evidence**

18 | The plaintiff argues that he meets or equals the listing for

19 | 1.04A.   Ct. Rec. 10 at 10.   Plaintiff asserts that the ALJ

20 | concluded, at the time of the hearing, that plaintiff did meet 1.04A

21 | and even requested that counsel write a decision for the ALJ so

22 | stating. *Id*.  Specifically, plaintiff alleges, at the hearing the

23 | ALJ concluded that the plaintiff meets Listing 1.02 for weight

24 | bearing joint, in part because of the significant meniscal tear and

25 | in part because of the impact of his obesity upon the joint. *Id*. At

26 | 11.  But in the written decision, plaintiff states, there was no

27 | explanation by the ALJ as to why he changed his mind.  Plaintiff

28 | concludes that the change in the decision is not based upon

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

substantial evidence.  *Id*.

**1.     Physical Impairments--Both Dr. Sawyer's Opinion and Dr. Jensen's Opinion Were Accorded Proper Weight**

Plaintiff argues that plaintiff meets or equals the listing for 1.04A.  Defendant responds that Kenneth D. Sawyer, M.D., a medical expert, testified that plaintiff's physical condition did not meet or equal a listed impairment (Tr. 323).

Defendant further explains that upon questioning by plaintiff's counsel regarding neurological symptoms that wax and wane, Dr. Sawyer maintained that plaintiff did not meet or equal the listing (Tr. 325-27).   More specifically, Dr. Sawyer testified that, "Basically he would be closer to equaling or meeting the listing than he would be if he never had any neurologic [INAUDIBLE]" (Tr. 327).  Defendant argues that "closer to" does not equate to having met the listing.  Ct. Rec. 13 at 10.  The undersigned judicial officer agrees.

Dr. Sawyer, a non-examining, non-treating doctor testified that plaintiff had the residual functional capacity (RFC) for sedentary exertion (Tr. 30).  Dr. Jensen, an examining and treating doctor, opined that plaintiff had severe limitations in keeping with a sedentary exertion level.   Dr. Jensen further opined it was reasonable to anticipate exacerbations of pain that would interfere with the ability to report to work on a regular and continuous basis (Tr. 28).

The ALJ noted Dr. Jensen's opinion but rejected portions of his opinion as "not keeping with the record as a whole, and objective evidence does not support such limitations" (Tr. 28).   The ALJ further noted that Dr. Jensen's subsequent Physical Disability Evaluation "is not in keeping with his own records" (Tr. 28). The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1   ALJ noted with particularity that:

2           No  mention  was  made  of  ongoing  pain  or
            limitations as a result of chronic pain, and in
3           fact, one month earlier, his chronic pains were
            noted  to  be  well  managed  on  Vicodan.    His
4           musculoskeletal      problems      were      felt      to
            exacerbate  his  depression,  however,  it  was
5           noted that his depression had resolved by July
            2002 (Tr. 28).

6

7        An ALJ may reject the testimony of an examining, but non-

8   treating  physician,  in  favor  of  a  nonexamining,  nontreating

9   physician when he gives specific, legitimate reasons for doing so,

10  and those reasons are supported by substantial record evidence.

11  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

12       The  ALJ's  justification  for  adopting  the  medical  expert's

13  testimony (Dr. Sawyer) over some of the examining nontreating

14  doctor's  opinion,  i.e.,  limitations  testimony,  was  specific,

15  legitimate and supported by substantial record evidence.   The

16  undersigned concludes that the ALJ met his burden in this regard.

17       **C.   Plaintiff's Allegations of Disabling Mental Impairments,
            Symptoms,  Pain,  and  Limitations--Properly  Discounted  In
18          View Of Credibility Determination and Rejection of the
            Contradicted Opinion of Dr. Sutherland**

19       Plaintiff complains that the limitations assessed by Stephen

20  Sutherland, Ph.D.[2] should have been given more weight.   Ct. Rec. 10

21  at 11.   Defendant responds that the ALJ properly noted that "while

22  Dr.  Sutherland  assessed  significant  limitations[3],  no  objective

23  ─────────────────────

24       [2]Dr. Sutherland had conducted two independent evaluations of
    Mr. Scharf at the request of the Department of Social and Health
25  Services (Tr. 16).

26       [3]Dr. Sutherland's findings are set forth at Tr. 164-71.   Dr.
    Sutherland noted that plaintiff was chronically mentally ill and
27  had a number of marked and moderate to marked limitations in his
    ability to function. Id.   He noted that plaintiff had limitations
28  at the marked level which is noted to be defined as having a "very
    significant interference with basic work-related activities" in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1  testing had been done that he could see, and no test scores are

2  contained in the record" (Tr. 26).   Ct. Rec. 13 at 8.

3       It is true that Dr. Sutherland wrote on the evaluation that his

4  ratings were "based on observations, history and testing" (Tr. 166).

5  But the only indication of any test given was his reference to "PAI"

6  (Personality Assessment Inventory) under "plan of care/prognosis,"

7  item 7, indicating that an assessment was done on September 20, 2000

8  (Tr. 167).   Upon Dr. Sutherland's re-examination of plaintiff on

9  June 5, 2001, he wrote that "Incomplete on Personality Assessment

10 Inventory because he [Mr. Scharf] had to go because of ride

11 problems" (Tr. 26, 171).   Other than that reference to an

12 uncompleted PAI, there are no other references to any testing done,

13 except Dr. Sutherland's writing that "Ratings based on the history,

14 behavioral observations and test finding" (Tr. 170).

15      The ALJ relied on Dr. Toews' testimony to arrive at his

16 conclusion that objective evidence did not support Dr. Sutherland's

17 report (Tr. 26). Dr. Toews is a non-examining, non-treating medical

18 expert (Tr. 16).   Dr. Toews testified that, "I don't see any-there

19 are no scores other than the mental–mini-mental status exam, which

20 indicates that the individual is cognitively intact, would not

21 appear to be any attention or memory problems or difficulty

22 following simple instructions and so on" (Tr. 318).   Dr. Toews

23 further testified that "at least by June of '02, the medical doctor

24 reported that depression was resolved" (Tr. 318).

25      Defendant urges that although Dr. Sutherland may have said that

26

27 terms of his ability to relate appropriately to co-workers and
   supervisors, interact appropriately with public contacts, and his
28 ability to respond appropriately to and tolerate the pressures and
   expectations of normal work setting (Tr. 164-166).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

his ratings were based on testing, there were no test scores for independent evaluation by a medical expert.  Ct. Rec. 13 at 8. Defendant contends, and the ALJ noted in his decision, there was no objective evidence to support the ratings of Dr. Sutherland and his ratings were not consistent with the record as a whole (Tr. 26; Ct. Rec. 13 at 8).

The opinion of an examining doctor, such as Dr. Sutherland, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).  The ALJ noted that no test scores from Dr. Sutherland's assessment were contained in the record (Tr. 26). Additionally, the ALJ explained that Dr. Sutherland's assessments pre-dated the opinion of plaintiff's treating physician Joe Jensen, M.D., who reported in July 2002 that plaintiff's depression was resolved (Tr. 24, 291).

The ALJ gave further specific and legitimate reasons for rejecting Dr. Sutherland's opinion.  He noted in his decision that:

> Mental health records show a seasonal pattern to his mental impairment, with moderate symptoms that come and go. Dr. Toews testified that he would have only mild impairments due to anxiety.  Counseling records reported that he is intelligent, fully functional, able to follow simple instructions, complete all his activities of daily living, solve easy dilemmas independently, adapt to mild changes in the environment, use sufficient social skills to interact with others appropriately, demonstrate sustained concentration, and had good insight. The record indicates he has some problems with authority (Tr. 28).

Moreover, defendant points out that plaintiff testified that he stopped going to the mental health clinic the week before the hearing because "[t]hey suggested I really didn't need counseling" (Tr. 328).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

After "careful review and consideration of all the evidence," the ALJ also found the plaintiff "to be less than fully credible" (Tr. 27). The ALJ noted in his decisions several examples of inconsistencies leading the ALJ to conclude that plaintiff's subjective complaints regarding the extent of his functional limitations were not completely credible (Tr. 27). The ALJ properly discredited the plaintiff's testimony of his alleged disabling mental impairments, symptoms, and limitations to the extent appropriate. The ALJ's decision contained a reasoned evaluation of plaintiff's credibility (Tr. 27). Because the ALJ set forth specific, legitimate reasons for giving less than full weight to plaintiff's testimony, the undersigned finds substantial evidence supporting the determination that plaintiff did not suffer from a severe mental impairment.

**D.   The ALJ Properly Determined That Plaintiff Had The RFC To Perform Sedentary Work**

The ALJ found that plaintiff has the residual functional capacity for sedentary exertion with the additional non-exertional limitation of occasional reaching overhead (Tr. 30).

The plaintiff asserts that the vocational expert was not helpful to the defendant in this case "because Mr. Dexter offered no opinion that Mr. Scharf is capable of substantial gainful activity." Ct. Rec. 10 at 15.

In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines ("Guidelines") to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999). The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

claimant.   The Secretary of Health and Human Resources promulgated these Guidelines in 1978 in order to improve the efficiency and uniformity of Social Security disability benefits determinations. *Desrosiers v. Secretary of Health and Human Servs* ., 846 F.2d 573, 576 (9th Cir. 1988).

As explained in *Desrosiers*, <u>significant</u> nonexertional impairments, such as poor vision, inability to tolerate dust or gases, or pain may make reliance on the grids inappropriate. *Id*. at 577. The fact that a nonexertional[4] limitation is alleged does not automatically preclude application of the Guidelines. *Tackett,* 180 F.3d at 1102.

The ALJ should first determine if a claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations.   *Tackett,* 180 F.3d at 1102.   The ALJ did just that.   He first determined that plaintiff's nonexertional limitations did not significantly limit the range of work permitted by his exertional limitations, as noted in his decision (Tr. 29). The ALJ properly weighed conflicting evidence concerning the plaintiff's present psychological and physical impairments.  The ALJ then properly applied the Guidelines to these factors, ensuring the final determination was consistent with other similar cases and expeditious.

The plaintiff challenges the sufficiency of the evidence supporting the ALJ's assessment.  The assertion of a nonexertional impairment, however, as noted above, does not preclude use of the

---

[4]Nonexertional limitations are certain mental, sensory or skin impairments which result solely in postural and manipulative limitations or environmental restrictions.  Appendix 2, Section 200.00(e).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1  Guidelines where evidence thereof is insufficient to support such a

2  finding.  Additionally, the plaintiff does not expressly dispute the

3  ALJ's use of the Guidelines.

4      The ALJ relied on the opinions of Dr. Sawyer and Dr. Toews that

5  plaintiff  is  capable  of  sedentary  work  despite  his  medical

6  impairments (Tr. 27-28).  This finding that plaintiff was capable of

7  sedentary  work  with  occasional  reaching  was  based  on  credible

8  evidence  of  insignificant,  non-exertional  limitations,  i.e.,  Dr.

9  Sawyer's recognition of plaintiff's combination of degenerative disk

10 disease  and  arthritis  of  his  neck  and  back  and  left  knee,  and

11 obesity (Tr. 323).  Credible evidence of significant non-exertional

12 limitations  was absent, warranting the use of the Guidelines.

13     **E.    ALJ's Change Subsequent to the Hearing**

14     Plaintiff  appears  to  be  most  puzzled  by  and  alleges  error

15 based on an interchange between plaintiff's counsel and the ALJ at

16 the hearing. Plaintiff asked this court to treat the "oral findings"

17 recited  in  the  transcript  as  inconsistent  with  the  ALJ's  later

18 written decision.

19     Based on the transcript of record (Tr.310-34) the following

20 dialog occurred at the close of the hearing:

21     ALJ: Okay. Counsel?  I would request that you prepare for
       me a proposed Decision which concludes that I find that he
22     meets the listing discussed by the doctor.

23     ATTY: 1.04A, Your Honor?

24     ALJ: Yes.  Other than that, the doctor acknowledges that
       these circumstances come and go, and are continuous
25     in that context.

26     ATTY: That meet or equal, Your Honor.

27     ALJ:  I  believe  he  meets,  and  he  has  [INAUDIBLE]
       compounding disorders of occasional, depression, pain, and
28     anxiety. His condition is that he probably meets–what is
       the weight-bearing joint in the listings?  You got it?

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

ATTY: I have the listings here.  Let me see what—

ALJ: Weight-bearing joint.
ATTY: I believe it it's 1.02.

ALJ: 1.--

ATTY: Yes, it is.

ALJ: Okay.  All right.  I believe he meets that listing as well, in light of his—especially in light of his weight. I would observe that he is significantly short of breath, even at sedentary level, since the alleged onset.  I think we'll wrap up there.  If you want to put some more medical—I mean, more evidence in, you're certainly welcome to do so.

ATTY: Thank you, Your Honor.

Tr. 332-33.

The issue posed by plaintiff on the basis of this interchange is whether the ALJ may or at least appear to verbally find claimant to meet a listing during the hearing, and subsequent to the hearing reject such finding.  The answer to this question is straightforward.  The ALJ may change his mind after considering additional evidence, reviewing the medical records, or just reflecting before issuing his opinion.  Nothing binds him to follow his own dicta, stated in the course of a hearing, in his decision. Plaintiff has cited no case law or rules to the contrary and the court has been unable to find precedent supporting such a contention.

To support his attack on the ALJ's determination that he improperly changed his mind, plaintiff maintains that the ALJ did not explain why he changed his mind after the hearing.  It is the undersigned judicial officer's opinion that the ALJ did spell out the post-hearing finding in his eleven-page decision, which inferentially explains his change of mind.  The findings were

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  precise and clear enough to facilitate meaningful judicial review.

2      The ALJ, in conducting oral examination of plaintiff, appeared

3  satisfied with the evidence of record regarding the nature of the

4  physical disability[5] but apparently had not finalized his mental

5  impairment or credibility determination. The credibility

6  determination appears to have been made "after carefully considering

7  all of the evidence of record, including the testimony at the

8  hearing" (Tr. 30). After the hearing, the ALJ reported that

9  specific attention was directed to sections 1.00 and 12.00 of the

10 listing of impairments dealing with the musculoskeletal system and

11 mental disorders (Tr. 26). The ALJ then determined that "[h]e [did]

12 not show the findings on examination required for disability to be

13 predicated upon medical considerations alone" (Tr. 26). The ALJ

14 then determined that plaintiff's mental impairments caused only mild

15 restrictions of activities of daily living (Tr. 26) and that

16 plaintiff was not fully credible (Tr. 27).

17     For this reason, when read in conjunction with the totality of

18 the hearing's transcript and the record, the ALJ's oral statements

19 at issue cannot be reasonably understood as final and binding, as

20 distinguished from, an expression of tentative views subject to

21 reconsideration before he made his expected formal decision in

22 writing.

23                          **CONCLUSION**

24     The record includes substantial evidence that the plaintiff did

25 not suffer from any significant non-exertional impairment(s) that

26

27     [5]The ALJ, however, seemed confused as to which exact listing
   the plaintiff qualified under. Further, the ALJ asked plaintiff's
28 attorney to provide a "proposed" decision for his review (Tr. 332-
   33).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

would have required the ALJ to abandon the grids, and possessed the residual capacity to perform sedentary work with occasional overhead reaching.   The undersigned judicial officer finds that the ALJ's findings were based on adequate documentation and careful appraisal. Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **Ct. Rec. 9,** filed on November 30, 2004 is **DENIED.**

2. Defendant's Cross-Motion for Summary Judgment, **Ct. Rec. 12,** filed on January 6, 2005 is **GRANTED.**

**IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order and an Order of Judgment and forward copies to counsel.

**DATED** this 24th day of May, 2005.

                                    *s/Lonny R. Suko*
                              _____
                                    LONNY R. SUKO
                              United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14